Raquel **MELENDEZ**, Appellant

v.

The **STATE** of Texas, Appellee.

No. 14–05–00371–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 9, 2006.

Bob Wicoff, Houston, for appellants.

Carmen Castillo Mitchell, Houston, for the State.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

**1.** A jury convicted appellant, and the trial court assessed a fine and 45 day sentence, but

## OPINION

RICHARD H. EDELMAN, Justice.

Raquel Melendez appeals a conviction for prostitution [1] on the grounds that the trial court erred by overruling her objections to jury argument and hearsay evidence. We affirm.

### Jury Argument

■ Appellant's first issue contends that the trial court erred by overruling the following objections to the State's jury argument:

> Prosecutor: ... there's a place where prostitution is alive and well. She's one of the people who contributes to that. A reason she doesn't remember this event, think about it, why doesn't she remember offering to engage in prostitution? *It's because this is something that she does day in and day out.*

> Appellant: Objection ... outside the record.

> The Court: Overruled.

> Prosecutor: This was not some singular event that she's going to remember.

> Appellant: Objection, outside the record....

> The Court: Overruled.

> Prosecutor: This is not some singular event that she's going to remember. *This is something that happens on a daily basis.*

> Appellant: Objection, outside the record....

> The Court: Overruled.

(emphasis added). Appellant contends that there was no evidence supporting the portion of the State's argument (italicized

suspended the sentence and placed her on community supervision for one year.

above) that she regularly engaged in prostitution or had ever done so before.

 Proper jury argument includes, among other things, reasonable deductions from the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000). Thus, it is improper to argue facts that are not in evidence. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex.Crim.App.2004). However, trial counsel is allowed wide latitude in drawing inferences from the evidence, so long as the inferences drawn are reasonable and offered in good faith. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim.App.1997).

In this case, the State's only witness was Deputy Kevin Monfort, an undercover member of the Harris County Sheriff's Department vice unit. He testified that on the evening of the offense, he was participating in an undercover investigation of citizen complaints of prostitution and violations of the sexually-oriented business laws at the St. James Cabaret (the "Cabaret") when appellant, a dancer there, approached his table, identified herself as "Lila," and asked to sit down. During their conversation, appellant asked Monfort if he was there to "play," which Monfort testified was a slang term used in sexually-oriented businesses to refer to sex for pay in order to avoid using explicit sexual terms or the word "prostitution." Appellant then invited Monfort to a private room, where she performed two private dances and repeatedly touched him in a sexual manner that violated sexually-oriented business regulations. After the dances, appellant sat on Monfort's lap and again discussed the topic of "playing." When Monfort expressed interest, appellant engaged in a negotiation, which resulted in a price of $325 for "straight sex." During this negotiation, Monfort stated

that appellant expressed no surprise at any of his questions and clearly understood the nature of the transaction they were negotiating. When Monfort informed appellant that he did not have enough cash, appellant attempted to hold the cash he did have until he could get more and suggested that Monfort use the club's cash machine. After Monfort explained that he did not want to do that, appellant told him he could use her name when he returned to avoid paying another entrance fee. Monfort then left the club without returning, and appellant was later arrested after her identity was determined using the database Harris County maintains for sexually-oriented businesses.

Appellant testified at trial that she did not recognize Monfort or remember dancing for him or any other events on the evening in question.[2] However, she stated that she did not offer to have sex with him because she never did that. She agreed that she had danced for hundreds of men in the intervening year between the alleged offense and trial.

Because there is no direct evidence of any other instance in which appellant offered to engage in sex for pay, we consider whether the evidence nevertheless reasonably supports an inference that doing so was a commonplace occurrence for her and thus supports the prosecutor's argument to that effect circumstantially. Deputy Monfort's testimony, outlined above, showed not only that appellant had offered to engage in sex for pay, but also that: (1) she brought up the subject; (2) she did so using a term that is commonly employed as a euphemism for prostitution in sexually-oriented businesses; (3) she invited Monfort to a private room where she could, without being observed by others,

**2.** The offense occurred in late February 2004, charges were filed in March 2004, but appel- lant allegedly did not learn of the charges until early November 2004.

touch him in ways that not only violated applicable laws, but were arguably calculated to increase Monfort's interest in paying to have sex with her; and then (4) she again pursued the subject with him and engaged in a negotiation of price in a way that reflected both a clear understanding of what was involved and an aggressiveness in "closing the deal."

From this evidence, it could reasonably be inferred that appellant had a level of experience and skill in these matters that had been developed through other such instances and, thus, that offering to engage in sex for pay was a commonplace occurrence for her. Under these circumstances, it was within the trial court's discretion to conclude that the State's argument to that effect was within the wide latitude allowed for drawing inferences from the evidence. Accordingly, appellant's first issue is overruled.

## Hearsay Evidence

■ Appellant's second issue argues that the trial court erred by overruling her hearsay objection to State's Exhibit 1, appellant's completed Sexually Oriented Business Employee Information Record.[3] We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 791–92, (Tex.Crim.App.2006). Error, if any, in the admission of evidence is cured where the same evidence comes in elsewhere without objection, either before or after the com-

plained-of ruling. *Lane v. State*, 151 S.W.3d 188, 192–93 (Tex.Crim.App.2004).

■ Here, appellant objected to the exhibit at trial on the basis that it was hearsay (and presumably not subject to the business records exception) because: (1) someone from the Cabaret needed to authenticate the exhibit because the entries were not made by the Sheriff's Department, but by someone from the Cabaret; and (2) Deputy Monfort did not testify that he was the custodian of the records.[4] However, the predicate for the business records exception to the hearsay rule may be established either by the custodian of records or *another qualified witness*. Tex.R. Evid. 803(6). Rule 803(6) does not require that the witness be the person who made the record or even be employed by the organization that made or maintained the record, and appellant cites no authority imposing any such requirement. Therefore, appellant's second issue fails to demonstrate that Monfort was not a qualified witness for purposes of the business record exception to the hearsay rule.

■ Appellant also argues that admission of this exhibit substantially strengthened the State's case because, without it, the State would have necessarily relied solely upon Monfort's independent recall of the event, and the defense theory of the case, that Monfort misidentified appellant, would have been more credible. However,

3. This document contains a photograph and description of appellant, as well as her stage name "Lila," legal name, address, social security number, and driver's license information.

4. Appellant also complains for the first time on appeal that this exhibit should not have been admitted under the business records exception to the hearsay rule because Monfort did not testify that: (1) the record was made at or near the time of the event being record-

ed; or (2) the person making the records or submitting the information had personal knowledge of the events being recorded. However, because these elements were not challenged in the trial court, they are not properly before us for review. *See* Tex.R.App. P. 33.1(a)(1)(A); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App.2002); *see also Carty v. State*, 178 S.W.3d 297, 305 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd).

Monfort testified without objection prior to the admission of the exhibit that he had discovered appellant's real name through the vice department's database (for which Exhibit 1 had been created and was the source of the information concerning appellant) using her stage name "Lila" and verifying her identity through the photograph attached to the exhibit. In addition, appellant testified, after admission of this exhibit, that she used the stage name "Lila," and that she had completed that form. Because appellant's identification from this exhibit was therefore established elsewhere at trial without objection, any error in admitting the exhibit was cured. Accordingly, appellant's second issue is overruled, and the judgment of the trial court is affirmed.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

In her first issue, appellant contends the trial court reversibly erred by overruling the following objections to the State's jury argument:

> Prosecutor: [T]here's a place where prostitution is alive and well. She's one of the people who contributes to that. A reason she doesn't remember this event, think about it, why doesn't she remember offering to engage in prostitution? *It's because this is something that she does day in and day out.*
>
> Appellant: Objection, violation of Rule 404, outside the record.
>
> The Court: Overruled.
>
> Prosecutor: This was not some singular event that she's going to remember.
>
> Appellant: Objection, outside the record, improper reason to convict.
>
> The Court: Overruled.

> Prosecutor: This is not some singular event that she's going to remember. *This is something that happens on a daily basis.*
>
> Appellant: Objection, outside the record, violation of 404.
>
> The Court: Overruled.

(emphasis added).

Appellant objected to the State's argument on two grounds: (1) the argument was outside the record; and (2) the argument violated Texas Rule of Evidence 404 and thus suggested an improper reason to convict appellant. The majority addresses only the first objection.

The majority concludes that the testimony of the State's only witness, Deputy Kevin Monfort, supports an inference that engaging in sex for pay was common for appellant and thus supports the State's argument "circumstantially." More specifically, the majority reasons that Deputy Monfort's testimony supports such an inference because this testimony demonstrates that appellant (1) brought up the subject of sex for pay with Monfort, using what Monfort stated is a slang term for prostitution in sexually-orientated businesses; (2) invited Monfort to a private room to touch him in ways that violated laws; and (3) negotiated a price in a way that indicated she had a clear understanding of how to "close the deal." The majority concludes it was reasonable to infer that "appellant had a level of experience and skill in these matters that had been developed through other such instances" and therefore that she engaged in prostitution on a daily basis.

### Was the State's jury argument improper?

The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion

based solely upon the evidence admitted at trial. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980); *Jones v. State*, 38 S.W.3d 793, 796 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). Under our current jurisprudence, a jury argument is permissible only if it falls into one or more of the following categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. *See Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim.App.1992); *but see Hawkins v. State*, 135 S.W.3d 72, 85–87 (Tex.Crim.App.2004) (Womack, J., concurring) (stating, in three-justice concurring opinion, that jurisprudence requiring closing arguments to fall within one of these four categories is "obviously untrue," "logically invalid," "nonsensical," and should be changed).

The argument in question does not fall within the third or fourth categories, and the State does not argue otherwise. The State asserts that its argument constitutes a summation of the evidence; however, as the majority correctly points out, this argument cannot be a summation of the evidence because there was no evidence at trial that appellant engaged in any act of prostitution other than the charged offense, much less any evidence that she engaged in prostitution on a daily basis. Therefore, the main issue is whether the challenged statements are a reasonable deduction from the evidence. *See Felder*, 848 S.W.2d at 94–95.

In making closing arguments, lawyers are allowed wide latitude in drawing inferences from the evidence; however, the inferences drawn must be reasonable and offered in good faith. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex.Crim.App.1997). On appeal, the State contends that it is reasonable to deduce from the evidence that appellant did not remember Monfort because the event was not unique or unusual for her. The State relies on appellant's testimony that she had danced for many men and did not remember many of them and on Monfort's testimony that appellant danced for him and offered him sex for pay on one occasion. Even if it were logical to connect this evidence in this way, it is still not reasonable to conclude that appellant does not remember Monfort because her participation in acts of prostitution is "something that happens on a daily basis." Monfort testified that appellant engaged in prostitution one time. Appellant testified that she had danced for hundreds of men but never engaged in prostitution. Taking as true Monfort's testimony that appellant engaged in prostitution once, her testimony that she has danced for hundreds of men does not support a reasonable inference that she has engaged in prostitution with these men or that she engages in prostitution daily. Further, the fact that appellant approached Monfort, used a purported slang term for prostitution, "play," and appeared to know "how to close the deal" and negotiate a price is not enough to support a reasonable inference that she engaged in acts of prostitution "on a daily basis." The State's closing argument that appellant did not remember Monfort because prostitution "is something she does day in and day out" and "something that happens on a daily basis" injected new and prejudicial "facts" and speculation into the record and went beyond a reasonable inference from the evidence presented at trial. *See Melton v. State*, 713 S.W.2d 107, 114 (Tex. Crim.App.1986) (stating that closing argument imputing to defendant the commission of many other similar crimes not supported by the evidence is impermissible). Because the State's argument was improper, the trial court erred in overruling appellant's objections.

## Was the trial court's error harmful?

The next determination is whether the trial court's error was harmful. Remarks that fall outside the permissible bounds of jury argument are generally nonconstitutional errors. *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998). Therefore, a reviewing court must disregard the error if it does not affect the accused's substantial rights. TEX.R.APP. P. 44.2(b). In other words, if, after reviewing the record as a whole, the reviewing court has fair assurance that the error did not influence the jury or had only a slight effect, appellant's conviction should not be overturned. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). The following three factors are used to analyze the harm associated with improper jury argument: (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct.

### *Severity of the Misconduct*

Because a prosecutor is a public official, the jury may give undue weight to a prosecutor's allusion to facts outside the record. *See Monkhouse v. State,* 861 S.W.2d 473, 478 (Tex.App.-Texarkana 1993, no pet.). The State's argument in this case not only injected new "facts" into the record, but it also invited speculation and could have been perceived by the jury as the prosecutor's inside knowledge that appellant had committed acts of prostitution on many other occasions, even though there was no evidence of any such acts presented at trial.

In addition, the prosecutor's argument that appellant did not remember the charged act of prostitution because she commits acts of prostitution on a daily basis contravenes the policy expressed in Rule of Evidence 404, which governs the admissibility of character evidence. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX.R. EVID. 404; *Johnston v. State,* 145 S.W.3d 215, 219 (Tex.Crim.App.2004). The rule prohibits the admission of evidence to prove a person's character, from which the trier of fact may infer that the person acted in conformity with that character trait on the occasion in question. *Johnston,* 145 S.W.3d at 219. For example, in a prosecution for injury to a child, the State might wish to offer other instances in which the defendant beat the complainant or another child to prove he is a "chronic child abuser." *Id.* In this scenario, the jury then would be invited to infer that, because the defendant is a chronic child abuser, he abused the complainant on the charged occasion. *Id.* That is precisely the character-propensity purpose prohibited by Rule 404(b). *Id.* For centuries, the law has rejected such evidence because it injects "dangerous baggage of prejudice, distraction from the issues, time consumption, and hazard of surprise." *Id.*

Likewise, in this case in which appellant was being tried for a single act of prostitution, the State could not have offered evidence of other instances, if any, in which appellant offered to engage in sexual conduct for a fee. *See id.* In Texas, a person can be paid for performing an exotic dance without committing a crime; however, a person cannot be paid a fee for engaging in sexual conduct, as defined by the Penal Code, without committing a crime. *See* TEX. PEN.CODE ANN. §§ 43.01, 43.02 (Vernon 2003). Nonetheless, the State's closing argument invited the jury to equate exotic dancing (a non-criminal act) with prostitution (a criminal act). Appellant admitted that she made her living by engaging in exotic dancing, but the State told the jury that appellant engages in prostitu-

tion daily. Appellant objected that the State's argument violated Rule 404 and that it suggested an improper reason to convict her. The State's misconduct was severe because the improper argument invited the jury to convict appellant based on her character as a person who, according to the State, engages in prostitution on a daily basis rather than based on the evidence presented at trial. Moreover, the jury had no way to evaluate the accuracy of the State's assertion that appellant engages in prostitution "on a daily basis." The State's argument invited the jury to convict on an improper basis—appellant's alleged action in conformity with her alleged character as a person who engages in prostitution daily. *See Melton*, 713 S.W.2d at 114.

The State cannot use closing argument to get evidence before the jury that is outside the record and prejudicial to the accused, but that is precisely what the State did in this case. *See Green v. State*, 679 S.W.2d 516, 517 (Tex.Crim.App.1984) (holding that prosecutor's argument at punishment phase of trial concerning testimony about defendant's reputation invited jury to speculate, was improper, and was not harmless); *Anderson v. State*, 633 S.W.2d 851 (Tex.Crim.App.1982) (stating that "[i]f defendant's objection to prosecutor's final argument on ground that argument invited jury to speculate that there was other evidence detrimental to defendant which jury had not heard had been overruled, a reversal would be required"). The Court of Criminal Appeals has cautioned that during jury arguments, prosecutors should refrain from making arguments based upon matters outside the record. Indeed, an argument alluding to information not introduced into evidence is improper and the error is reversible if the argument injects or emphasizes harmful facts outside the record. *See Everett v. State*, 707 S.W.2d 638, 641 (Tex.Crim.

App.1986) (holding that prosecutor's jury argument in response to contention by defense attorney that defendant's life was in jeopardy was so prejudicial as to require new trial); *Fuentes v. State*, 664 S.W.2d 333, 337–38 (Tex.Crim.App.1984) (holding that prosecutor's comments that defense counsel was "in bad faith like usual" and that the evidence of police misconduct he was seeking to elicit was "garbage," were manifestly improper, harmful, and prejudicial, and thus constituted reversible error); *Daniel v. State*, 550 S.W.2d 72, 73 (Tex.Crim.App.1977) (holding that prosecutor's argument that officer was shot placed before the jury new and harmful facts that were not supported by evidence, and error was not harmless). The State's argument in this case was manifestly improper and injected new and harmful "facts" into the proceeding. Further, the State's improper and unsupported statements likely influenced or had more than a slight effect on the jury's decision to convict.

### Measures Adopted to Cure Misconduct

Appellant made three timely objections to the State's improper argument, all of which the trial court overruled. The trial court did not give a curative instruction. Furthermore, the prosecutor's making of two more improper statements after the trial court overruled appellant's first objection may have emphasized these statements to the jury, and the trial court's overruling of defense counsel's objections to all three statements may have indicated to the jury that it was permissible to convict on this improper basis. *See Good v. State*, 723 S.W.2d 734, 738 (Tex.Crim.App. 1986).

### Certainty of Conviction Absent Misconduct

The third factor—certainty of conviction absent the misconduct—also weighs in fa-

vor of finding harm. As noted above, Deputy Monfort was the State's only witness, and no other evidence supported appellant's conviction. Appellant testified that, although she had danced for many men and did not remember Deputy Monfort, she had not engaged in prostitution with Monfort because she had never engaged in prostitution with anyone. Though there is legally sufficient evidence to support her conviction, the only evidence before the jury was the conflicting testimony of Deputy Monfort and appellant. The evidence of appellant's guilt was not overwhelming. Although the jury might have convicted appellant absent the State's impermissible jury argument, it is far from certain that the jury would have done so. In *Rodriquez*, after appellant had just been convicted of one heroin sale, the prosecutor argued during punishment that appellant had made other heroin sales to many other people. *See Rodriquez v. State*, 520 S.W.2d 778, 780 (Tex.Crim.App.1975) (holding that trial court reversibly erred in overruling objection to argument that referred to new and harmful facts neither in evidence nor reasonably inferred from evidence). The prosecutor stated, "He has touched more lives than a killer could do with the heroin he helps disburse." The Court of Criminal Appeals reversed, holding that evidence of one sale, and the small quantity sold, did not support such an inference. *Id.*

Furthermore, in *Melton*, the Court of Criminal Appeals held that the State's closing argument, implying that the defendants had committed 300 other thefts similar to the charged theft, was so prejudicial that it was not cured by the trial court's instruction to disregard it. *See Melton*, 713 S.W.2d at 113–14. Here, the trial court did not instruct the jury to disregard; rather, by sustaining three objections to this evidence, the trial court tacitly signaled to the jury that it was proper to

convict based on the other alleged acts of prostitution mentioned in the State's closing argument. If the improper argument in *Melton* could not survive a harm analysis despite an instruction to disregard, then surely the application of this logic here, where the State's closing argument was not tempered by an instruction to disregard, should not produce a different result.

### Conclusion

The evidence in this case does not support a reasonable inference that appellant engaged in prostitution on a daily basis. The State's argument was an invitation for the jury to speculate on prejudicial "facts" that were not supported by evidence and to convict her on an improper basis. Under these circumstances, the trial court's error was not harmless. Accordingly, this court should sustain appellant's first issue and reverse and remand this case for a new trial.

Jimmie Ed HUGHES, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 12–05–00038–CR.

Court of Appeals of Texas, Tyler.

May 10, 2006.

William M. Curley, Appointed Atty., Palestine, for appellant.

David Cervantes, Dist. Atty., Robert A. McGlohon, Jr., Asst. Dist. Atty., Crockett, for state.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and BASS, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.

## *OPINION*

BILL BASS, Justice.

A jury convicted Appellant of one count of sexual assault and two counts of indecency with a child. The jury assessed Appellant's punishment at imprisonment for six years on the sexual assault count and imprisonment for two years, probated for ten years, on each of the two counts of indecency with a child. In his first issue, Appellant contends the evidence supporting his sexual assault conviction is legally insufficient. In his second issue, Appellant challenges the authority of the trial court to require, as a condition of probation, that he give public notice of his sex offender status by publishing it in a newspaper where he lives every three months and by

placing a sign at his front door stating that he is a convicted sex offender. We affirm.

## BACKGROUND

C.H. is the complainant, and Appellant is her father. C.H. was fifteen years of age when she reported her father's sexually abusive conduct. At trial she related a history of sexual abuse extending back to when she was four years old. Appellant denied his daughter's accusations of sexual abuse. The case had been previously tried, but this court reversed Appellant's conviction and remanded the cause to the trial court. The opinion in the first appeal of this case contains a complete statement of the facts. *See Hughes v. State*, 128 S.W.3d 247 (Tex.App.-Tyler 2003, pet. ref'd).

## LEGALLY INSUFFICIENT EVIDENCE

 In his first issue, Appellant maintains there is no proof or legally insufficient proof of the complainant's lack of consent, a statutory element of the offense of sexual assault. Although C.H. was no more than fifteen years of age at the time of the offense, the State charged Appellant under Section 22.011(a)(1) of the Texas Penal Code rather than Section 22.011(a)(2), sexual assault of a child, which requires no proof of consent. *Compare* TEX. PEN.CODE ANN. § 22.011(a)(1) (Vernon Supp.2005) *with* TEX. PEN.CODE ANN. § 22.011(a)(2) (Vernon Supp.2005).

Appellant was charged with the sexual assault of C.H. in count three of the indictment, which alleges the following:

And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and on to said Court that on or about the 15th of October, 2000, A.D., in said County and State, and anterior to the presentment of their indictment, Jimmie Ed Hughes, Jr., did then and there, intentionally or knowingly cause the

penetration of the female sexual organ of C.H. by Defendant's finger, without the consent of C.H.

*See id.* § 22.011(a)(1)(A).

Likewise, the application paragraph of the court's charge provides as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th day of October, 2000, in Houston County, Texas, the defendant, Jimmie Ed Hughes, Jr., did then and there intentionally or knowingly cause the penetration of the female sexual organ of C.H. by defendant's finger, without the consent of C.H., then you will find the defendant guilty of Count Three—Sexual Assault, as charged in the indictment.

### *Standard of Review*

 The standard of review of legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex.Crim.App.1998). The *Jackson* standard measures evidentiary sufficiency against the "substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Fuller v. State*, 73 S.W.3d 250, 252 (Tex.Crim.App.2002).

### *Analysis*

Lack of consent is a statutory element of sexual assault as charged in count three of the indictment. TEX. PEN.CODE ANN. § 22.011(a)(1). The statute enumerates when conduct is committed without the consent of the other person, stating as follows:

(1) the actor compels the other person to submit or participate by the use of physical force or violence;

(2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat;

(3) the other person has not consented and the actor knows the other person is unconscious or physically unable to resist;

(4) the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or resisting it;

(5) the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring;

(6) the actor has intentionally impaired the other person's power to appraise or control the other person's conduct by administering any substance without the other person's knowledge;

(7) the actor compels the other person to submit or participate by threatening to use force or violence against any person, and the other person believes that the actor has the ability to execute the threat;

(8) the actor is a public servant who coerces the other person to submit or participate;

(9) the actor is a mental health services provider or a health care services provider who causes the other person, who is a patient or former patient of the actor, to submit or participate by exploiting the other person's emotional dependency on the actor;

(10) the actor is a clergyman who causes the other person to submit or participate by exploiting the other person's emotional dependency on the clergyman in the clergyman's professional character as spiritual adviser; or

(11) the actor is an employee of a facility where the other person is a resident, unless the employee and resident are formally or informally married to each other under Chapter 2, Family Code.

TEX. PEN.CODE ANN. § 22.011(b)(1–11) (Vernon Supp.2005).

C.H. testified that her father began molesting and assaulting her when she was three or four years old, "[a]nd I would be so scared and wanted to just hide."

[C.H.] A. I would lay there trying to go to sleep, but it was constant thought of when is my door going to open, or when is someone going to come in. And so I tried to stay awake as long as possible so maybe whenever he would come in, I could make some kind of noise and wake up my mom. And then he would leave.

. . . .

[STATE] Q. So he would take your hand and put it on this [sic] erect penis?

A. Yes, ma'am.

Q. For you—and guide you to masturbate him?

A. Yes, ma'am.

Q. How often did that happen? Was that something that happened regularly?

A. It was regularly. I used to try to snatch my hand back. And he would—

Q. Would he ever rub him—rub his body against you when he was sexually aroused like that?

A. Yes, ma'am.

Q. Would your father say anything to you when he was doing these things to you?

A. Whenever I would get upset, whenever I would get upset, he would sit there and tell me to relax and that it was okay because I was his pretty little girl, that I loved my—(Witness crying.) I'm sorry.

In regard to the October 2000 sexual assault alleged in count three, C.H. testified, as follows:

Q. And will you describe what happened at that time?

A. I woke up to my father taking off my clothes in the middle of the night. And—

Q. Where was this?

A. I was in my bedroom.

Q. Okay. And this is at the same house that you told us about earlier that's— that was in Grapeland in Houston County?

A. Yes, ma'am.

Q. And what—what happened?

A. He started taking off my clothes, and I woke up to it. And he was feeling on my chest, then he was feeling on my genitals. And he was kissing on me. And—

THE COURT: Would you like to take a short break?

THE WITNESS: Yes, please, if you don't mind.

After a recess for lunch, C.H. continued her testimony.

Q. [You were] beginning to share with us what happened in October of 2000. So—

A. Yes, ma'am. I remember waking up to my father touching me and talking [sic] off my clothes. And I'm not sure what time it was. It was pretty late. He had been—he had taken off most of my clothes and was touching all over me and kissing on me and feeling my chest, my vagina area.

Her testimony concerning the indecency with a child charge alleged in count five of the indictment also demonstrates that Appellant often began to sexually assault C.H. while she slept.

Q. What happened when you woke up and you saw him beside you or—or kneeling over you and you could feel him touching you?

A. I tried to ignore it and make it seem like it actually wasn't there. (Witness crying.) Sorry. I woke up to my father feeling over my clothes at first. Then he lifted up my shirt, and he was feeling my chest. Then he started to do more. And whenever he went to take off my pants, I think he noticed that I had on a pad because I was on my period. So therefore, he stopped. He was just rubbing my chest and my stomach and my legs, and then he just left me alone.

Q. When you say your chest or do you mean your breasts?

A. Yes, ma'am.

Q. And he was touching your breasts under your clothes?

A. Yes, ma'am.

Q. Did—was this something that was consensual?

A. It happened on a regular basis. I— I didn't—I didn't consent to it. But I just tried to act like it wasn't happening.

From C.H.'s earliest recollection until she was fifteen, Appellant, who should have been her guardian and protector, taught her to satisfy his sexual whims, no matter how disgusting. And yet she managed to show her revulsion and aversion, her lack of consent, in a number of ways. She testified that in order to avoid his advances (1) she would keep her little sister in bed with her; (2) she would undress in the bathroom with the door locked to

keep Appellant from seeing her undress; (3) she tried to stay with friends and grandparents; (4) she would wear clothing in bed that was hard to remove; (5) she would try to snatch her hand away when she masturbated Appellant; (6) she would become upset and cry; and (7) she would avoid having to wake up Appellant so she would not be grabbed. On several occasions, Appellant began to sexually abuse or assault C.H. while she was asleep. One can infer from this that Appellant knew C.H. did not consent to his advances. The evidence shows that Appellant commenced the assault charged in count three while C.H. slept. When she awoke, Appellant had removed most of her clothes and was feeling her chest and vaginal area. From this testimony, the jury could reasonably infer that the assault was completed before C.H. was conscious or physically able to resist. The evidence is legally sufficient to show the October sexual assault was without C.H.'s consent. Appellant's first issue is overruled.

### NOTICE OF SEXUAL OFFENDER STATUS

█ In his second issue, Appellant contends that the trial court had no authority to require as a condition of Appellant's probation that Appellant publish notice of his sex offender status in the newspaper every three months and place a sign on his front door stating that he is a convicted sex offender. Appellant argues that Article 62.045 of the Texas Code of Criminal Procedure provides specific exclusive and mandatory direction on how the public is to be notified when sex offenders reside in their neighborhoods. *See* Act of June 19, 1999, 76th Leg., R.S., ch. 1557, 1999 Tex. Gen. Laws 5354, 5357–58 (current version at TEX.CODE CRIM. PROC. ANN. art. 62.056 (Vernon Pamph. Supp.2005)). Article 42.12 of the Code provides that the defendant, as a condition of probation, shall give notice of the offense for which he was placed on probation "in any manner required by the judge." TEX.CODE CRIM. PROC. ANN. art. 42.12 § 11(a)(23) (Vernon Pamph. Supp.2005). Appellant maintains that the specific provisions of Article 62.045 preempt the general provision for public notice contained in Article 42.12, Section 11(a)(23).

Article 62.03(c) of the Texas Code of Criminal Procedure provides that the trial court shall assess the risk level of a sex offender placed on probation and assign the offender a risk level of one (low), two (moderate), three (high) using a screening method developed by a risk assessment review committee established by the Department of Public Safety. Act of June 19, 1999, 76th Leg., R.S., ch. 1557, 1999 Tex. Gen. Laws 5354, 5355 (current version at TEX.CODE CRIM. PROC. ANN. art. 62.053 (Vernon Pamph. Supp.2005)). Using the screening tool developed by the risk assessment committee, Appellant was assigned a risk level of one (low) indicating that he poses a low danger to the community and will not likely engage in criminal sexual conduct. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 177, 2001 Tex. Gen. Laws 357, *repealed by* Act of June 18, 2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3397–98. Article 62.031(b) prohibits publication of the person's sex offender status by a law enforcement agency if the offender is assigned a risk level of one. Act of June 18, 2003, 78th Leg., R.S., ch. 347, 2003 Tex. Gen. Laws 1509, *repealed by* Act of June 18, 2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3397. The trial court may override the risk level assigned only if it (1) believes the assessed risk level is not an accurate prediction of the risk the offender poses to the community and (2) documents the reason for the override in the offender's case file. Act of May 18, 2001, 77th Leg., R.S., ch. 177, 2001 Tex.

Gen. Laws 358, *repealed by* Act of June 18, 2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3397–98. The trial court in the instant case made no findings documenting her reason for overriding Appellant's risk level.

■ The State contends that Appellant failed to preserve error by not objecting in the trial court to the conditions of probation he now challenges on appeal. *See* Tex.R.App. P. 33.1. In *Mendez v. State*, 138 S.W.3d 334, 342 (Tex.Crim.App. 2004), the court stated, "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, which are not involved here, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." The court of criminal appeals in *Marin v. State*, 851 S.W.2d 275, 278–79 (Tex.Crim.App.1993) identified three classes of "rights," each with distinct requirements for preservation of an appellant's complaint of their denial. A systemic or absolute requirement is a law that the trial court has a duty to follow even if the parties wish otherwise. *Id.* at 279. A party may complain on appeal that such a requirement was violated, even if the party failed to complain in the trial court. *Id.* A second category is the "waivable right" or a right that must be implemented unless expressly waived. *Id.* The third class is the "forfeitable right"; in this class are rights of litigants that are to be implemented on request. *Id.* Most litigants' rights fall into the latter category and are forfeited by a failure to exercise them. *Id.* at 278. The preservation of this kind of complaint requires a timely specific objection and a ruling by the trial court. *Id.* at 279; Tex.R.App. P. 33.1(a). Noncompliance with Rule 33.1(a) results in forfeiture. The State contends, and we agree, that the "right" urged by Appellant

in this case is included in the latter category.

The appellant in *Speth v. State*, 965 S.W.2d 13 (Tex.App.-Houston [14th Dist.] 1998), *rev'd on other grounds*, 6 S.W.3d 530 (Tex.Crim.App.1999), did not object to the conditions of his probation at trial, but complained about them for the first time on direct appeal. The court of appeals rejected the State's contention that the appellant had failed to preserve his complaint by making a trial objection and held that the appellant could raise "a defect in his sentence" even though he had not objected to it at trial. *Id.* at 15. The court of appeals opinion was based on a line of cases holding that if a punishment is not authorized by law, that portion of the sentence imposing that punishment is void. *See, e.g., Hern v. State*, 892 S.W.2d 894, 896 (Tex.Crim.App.1994). However, on appeal to the court of criminal appeals, that court concluded that, although the grant of community supervision and its accompanying conditions are part of the judgment, they are not part of the sentence. *Speth v. State*, 6 S.W.3d 530, 532 (Tex.Crim.App.1999). The court of criminal appeals held that "an award of community supervision is not a right, but a contractual privilege, and the conditions thereof are terms of the contract entered into between the trial court and the defendant. Therefore, conditions not objected to are affirmatively accepted as terms of the contract." *Id.* at 534. The court concluded that, assuming the probationer knew what the conditions were in time to object at trial, "[a] defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable." *Id.*

In the recent case of *Kesaria v. State*, PD–1803, PD–1804, 189 S.W.3d 279, 281–

82 (Tex.Crim.App. 2006), the court of criminal appeals cited *Speth* and reiterated the necessity of an objection in order to preserve a complaint regarding conditions of probation. The court, however, determined that the record indicated the probationer had not had an opportunity to object and reviewed the appellant's complaint. *Id.,* at 281.

The record in the instant case shows that Appellant had the opportunity to object in the trial court, but failed to do so. No error is preserved. Therefore, we do not address Appellant's argument that the specific provisions of Article 62.045 regarding notice of a probationer's sexual offender status preempt the general provisions set out in Article 42.12, Section 11(a)(23). Appellant's second issue is overruled.

### DISPOSITION

The judgment of the trial court is *affirmed.*

Ruben HERRERA, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–05–00201–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 16, 2006.

Allen C. Isbell, Houston, for appellant.

Donald W. Rogers, Houston, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Ruben Herrera, was convicted of capital murder and sentenced to an automatic life sentence. On appeal, he raises two points of error relating to a videotaped confession: (1) that it was inadmissible under Texas Code of Criminal Procedure Article 38.23; and (2) that it was inadmissible under the Fifth Amendment as applied to the states through the Fourteenth Amendment to the United States Constitution. Appellant's claims are the same insofar as his basis for appeal is that police officers made promises of leniency and thus rendered the confession inadmissible. We affirm.

### Factual and Procedural Background

This appeal concerns solely the voluntariness of an oral confession. There are no challenges to the sufficiency of evidence, or to the admissibility of any other particular pieces of evidence. Thus, we outline the facts only briefly.

A grand jury indicted appellant, Ruben Herrera, of capital murder. At trial, the State introduced a videotaped interview between appellant and police in which Herrera admitted involvement in various crimes. The record contains a full transcript of this videotape and we have viewed it ourselves. Appellant objected to the videotape's admission on several bases. In this appeal, he claims only that the police promised him leniency if he spoke to them and thus that his confession was inadmissible either because he was induced or coerced into confessing. Specifically, appellant complains that the following statements from police violated Texas statutory law and federal constitutional law:

Sergeant Mayer: You're looking at a bunch of time right now, but I think you can help us.

Mr. Herrera: (Laughter.) How's that helping me?

Sergeant Mayer: We can talk to the D.A., get you an offer, if you help us.

Mr. Herrera: Yeah, I can help you. What do you-all want to know?

Sergeant Mayer: But I think we can help you, if you'll help us with these.

According to appellant, these statements from police constituted a promise of leniency. Further, appellant notes that until this point in the videotape, he had not implicated himself at all.

The trial court held a hearing on the motion to suppress and, after viewing the tape and hearing testimony from Officer Tyler, who was also present at the interview, overruled the motion. An edited version of appellant's videotaped confession was ultimately admitted at trial. The jury convicted appellant of capital murder. Because the State did not seek the death penalty, the trial court imposed an automatic life sentence. Appellant timely filed notice of appeal. We affirm.

## Analysis

### I. Standard of Review

Before passing upon appellant's issues, we must first determine the applicable standard of review. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). When reviewing a trial court's ruling on a motion to suppress, we afford almost total deference to determinations of historical facts, especially when those determinations involve assessment of witness credibility and demeanor. *See Masterson v. State*, 155 S.W.3d 167, 170 (Tex.Crim. App.2005). However, when, as here, we have a videotape of the confession and an uncontroverted version of events, we re-view the trial court's ruling on an application of law to facts de novo. *See generally Mayes v. State*, 8 S.W.3d 354, 358 (Tex. App.-Amarillo 1999, no pet.) (applying de novo review to trial court's ruling on motion to suppress because credibility and demeanor were not at issue when facts surrounding interrogation were videotaped and uncontroverted); *Douglas v. State*, No. 09–00–00484–CR, 2002 WL 538859, at *1–5 (Tex.App.-Beaumont April 10, 2002, no pet.) (not designated for publication) (explaining that the evidence on the motion to suppress was a videotape of the encounter and uncontroverted testimony from two police officers; determining that, while giving appropriate deference to the finding of historical facts, the court would review the trial court's ruling de novo); *see also, Carmouche v. State*, 10 S.W.3d 323, 332 (Tex.Crim.App.2000) (stating that the court will not turn a blind eye to a videotape when it presents indisputable visual evidence contradicting the testimony of a police officer; also noting that evaluating videotape evidence does not involve evaluations of credibility and demeanor); *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999) (reviewing de novo ruling on motion to suppress where there is a question of law with no disputed facts). Like our sister courts and the Court of Criminal Appeals, we do not turn a blind eye to the videotape. Rather, we have reviewed the videotape, note there is no controversy about the statements made, and made our ruling based on a de novo review.

### II. There Were No Promises of Leniency

Appellant brings his claim under both state statutory and federal constitutional law. While the claims have the same basis—namely, the police induced or coerced appellant's confession with promises of leniency—they are decided with different

tests. Yet regardless of which test we apply, the result is the same: the police did not make such a promise to appellant so as to overbear his will or to induce him to confess falsely. As we explain below, it is immaterial whether appellant actually testified falsely; it matters only that the promise made was not of such a character to overbear appellant's will or to cause him to testify falsely.

Articles 38.21 and 38.23 of the Texas Code of Criminal Procedure govern the introduction of certain evidence in criminal prosecution. Article 38.21 provides, "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." TEX.CODE CRIM. PROC. Art. 38.21. Article 38.23 states, *inter alia,* "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of Amer-

ica, shall be admitted in evidence against the accused on the trial of any criminal case." At trial, appellant argued police promised leniency in exchange for his confession. As a result, appellant claims, the police induced or coerced his statement— either would be enough under our statutory scheme to prevent the statement's admission at trial. Here, we address two exceptionally similar, though differently stated, standards under state and federal law to determine if appellant's confession was so tainted by police activity, such that it should have been excluded.[1] We take each in turn.

### A. State Claims

■■■■ Texas law uses a four-prong test when evaluating whether police made an improper inducement so as to render a confession inadmissible. *Martinez v. State,* 127 S.W.3d 792, 794 (Tex.Crim.App. 2004) (laying out test for invalid confession under Article 38.21).[2] To render a confes-

---

1. Initially, we note most cases evaluating promises of leniency do not seem to draw formal distinctions between federal and state standards; neither do they explain why they have chosen to use the test for inducement versus the test for voluntariness. *See, e.g., Masterson v. State,* 155 S.W.3d 167, 170–71 (Tex.Crim.App.2005) (reviewing the claim for impermissible promises of leniency without identifying a federal or state standard); *Charles v. State,* 14–01–01247–CR, 14–01–01248–CR, 14–01–01249–CR, 2003 WL 21511268 at *6 (Tex.App.-Houston [14th Dist.] July 3, 2003) (not designated for publication) (discussing impermissible promises for leniency without stating it is making separate determinations based on state and federal law) (aff'd on other grounds, 146 S.W.3d 204 (Tex.Cr.App.2004)); *but cf. Espinosa v. State,* 899 S.W.2d 359, 364 (Tex.App.-Houston [14th Dist.] 1995, pet. ref'd) (highlighting the difference between the test for inducement— the standard under state law—with coercion—the test for voluntariness under federal law; however, that court did not consider a federal claim of coercion). Because, as the *Espinosa* court highlights, the tests are dis-

tinct, we separate them for our consideration. Perhaps there is some elevation of form over substance as the result is likely the same under either. *See generally Henderson v. State,* 962 S.W.2d 544, 564–65 (Tex.Crim.App. 1997) (reviewing question of inappropriate statements under both state statutory and federal constitutional standards and ultimately using its resolution of the question under the state standard for inducement to also answer the federal question of voluntariness). However, the tests are different, as the test for coercion seeks to determine if the defendant's will was actually overborne, while the test for inducement seeks to determine if the promise would likely lead to a false confession. Of course, it does not matter under either test if the confession were false or not.

2. At other times, courts focus on the language in Article 38.21 stating that the confession must be "freely and voluntarily made without compulsion or persuasion." *See Drake v. State,* 123 S.W.3d 596, 602 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). In those cases, the courts utilize the totality-of-the-circum-

---

stances test to determine if the confession were voluntary, rather than the four-prong test. *See id.* (citing *Creager v. State*, 952 S.W.2d 852, 855 (Tex.Crim.App.1997)). The principal determination is phrased as whether or not the defendant's will was overborne. *See id.* This standard contrasts with the standard of *Martinez* and *Espinosa*, in which the concern is whether the promise was likely to induce a false confession. We address the test for coercion below under our evaluation of appellant's federal claim.