Ty Wayne JOHNSTON, Appellant,

v.

The STATE of Texas.

No. 1650–03.

Court of Criminal Appeals of Texas.

Sept. 15, 2004.

Alexander L. Calhoun, Austin, for Appellant.

Whitney S. Wiedeman, Asst. District Atty., Lockhart, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

COCHRAN, J., delivered the opinion of the Court, joined by KELLER, P.J., MEYERS, PRICE, WOMACK, and HOLCOMB, JJ.

Appellant was charged with intentionally or knowingly causing injury to a child, three-year-old Christopher, by burning his hand with a lit cigarette. The trial court admitted, over appellant's objection, twelve pictures of four-year-old Autumn, Christopher's sister, which showed that she had soft tissue bruises. In this case, we must determine whether those pictures of an extraneous offense were admissible under Texas Rule of Evidence 404(b).[1]  The

court of appeals concluded that the pictures of Autumn's bruises, as evidence "of a larger pattern of abuse" against both children, were "relevant as to absence of mistake and rebuttal of appellant's defensive theory."[2]  We hold that these pictures were not relevant for a permissible purpose under Rule 404(b), but that their admission was harmless error.

### I.

Appellant lived with his pregnant wife, Crystal, and her two children from previous relationships, Autumn and Christopher.  On May 23, 2000, Crystal had premature labor pains, so appellant took her to the hospital.  He took the two children also.  Hospital staff noticed that three-year-old Christopher appeared "listless" and "lethargic" and that Christopher's baseball cap partially covered a number of bruises on his face.

The hospital staff wanted to take Christopher to the emergency room, but appellant initially refused.  It was only after the nurses made repeated requests that appellant finally allowed Christopher to be examined.  While walking to the emergency room, appellant stated that Christopher also had a big bruise on his back.  In fact, Christopher had a large number of bruises up and down his back, a knot the size of a baseball, many bruises on his abdomen, a cut on his chin, and a single cigarette burn on the palm of his right hand.  He was also vomiting which indicated that he might have abdominal trauma.

After examining Christopher, the hospital staff concluded that his injuries were the result of "chronic child abuse," so they

1. Appellant's ground for review states:
   The court of appeals' decision regarding the admissibility of extraneous evidence of child abuse directly conflicts with this Court's decisions in *Owens v. State*, 827 S.W.2d 911 (Tex.Crim.App.1992), and *Pav-* lacka v. State, 892 S.W.2d 897 (Tex.Crim. App.1994).

2. *Johnston v. State*, 115 S.W.3d 761, 765 (Tex. App.-Austin 2003).

contacted the Austin Police Department and Child Protective Services (CPS). During a non-custodial interview at the hospital with Officer Powell, appellant said that Christopher had run into his mother's cigarette by accident. When Officer Powell told appellant that he did not believe him, appellant "broke down, started crying, and confessed to burning" Christopher to stop him from crying and to prove to him that the cigarette was hot.

After Christopher had been treated and transferred to Brackenridge Hospital, CPS workers took custody of Autumn and gave her a physical examination. She too had multiple, but less serious, bruises on her legs and face.

A CPS investigator interviewed Christopher who showed her the cigarette burn on his hand and said: "Daddy burn." Appellant told the CPS investigator that he "had hit Christopher and Autumn repeatedly with a bat; he had slammed—routinely had slammed Christopher and Autumn's face[s] into the wall because they wouldn't stand in time out and that was why they had the black eyes."

The State obtained two indictments against appellant. The defense informed the jury in this case that a different jury had already convicted appellant for causing serious bodily injury and bodily injury to both Christopher and Autumn and sentenced him to forty-five years in prison for those offenses.

The defense called Crystal Johnson to testify in its case-in-chief. She stated that she had pleaded guilty to four counts of injury to a child and was serving a seven-year sentence for her abuse of both Christopher and Autumn. She admitted that, at her own punishment hearing, she had told the judge that she accidentally burned Christopher with the cigarette when he ran into it. She explained that appellant had tried to convince her to take all of the blame for the injuries to both kids, but she now wanted to tell the truth which was "Ty Wayne Johnson did burn Christopher." On cross-examination by the State she elaborated: "Christopher had told Ty the cigarette was hot, and Ty Johnson said yes. And he literally took the cigarette and placed it in Christopher's hand until it burned him. On purpose. For nothing." The State asked Crystal several questions about how she used to hit both Christopher and Autumn and then offered into evidence twelve pictures of Autumn that had been taken by CPS. When the defense objected to their relevance, the State responded: "The issue is now before the jury, absence of mistake or accident, if it's 404." The trial court overruled the objection. Crystal then testified that both she and appellant had caused the injuries depicted in the pictures.

In the court of appeals, appellant argued that the trial court abused its discretion when it admitted, over his relevance objection, the photographs of Autumn's injuries which, as Crystal testified, were caused by both herself and appellant. Appellant objected to the admission of these photographs because they were not relevant to whether appellant knowingly or intentionally burned Christopher with a cigarette. The court of appeals concluded that they were relevant and admissible to show both appellant's identity as the one who burned Christopher (rebutting any implication that Crystal had accidentally inflicted the injury) and to show that Christopher's burn was not the result of an unintended mistake or accident.[3] We granted review to determine whether this holding conflicts with our decisions in *Owens v. State*[4] and

---

**3.** *Johnston v. State,* 115 S.W.3d at 765.

**4.** 827 S.W.2d 911 (Tex.Crim.App.1992).

*Pavlacka v. State.*[5]

## II.

■ Texas Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[6] The rule prohibits only that evidence which is offered to prove a person's character, from which the trier of fact is then to infer that the person acted in conformity with that character trait on the occasion in question.[7] For example, in an injury to a child prosecution, the State might wish to offer other instances in which the defendant beat this or another child to prove he is a "chronic child abuser." The jury would then be invited to infer that, because the defendant is a chronic child abuser, he abused the child on this charged occasion. That is precisely the character-propensity purpose prohibited by Rule 404(b). Although this "child abuser" character evi-

dence is logically relevant to show the defendant committed the charged act of physical abuse, the law has, for centuries, rejected such evidence because it injects "dangerous baggage of prejudice, distraction from the issues, time consumption, and hazard of surprise."[8]

■ Extraneous offense evidence may, however, be admissible if is logically relevant to prove some other fact.[9] Rule 404(b) states that extraneous offense evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]"[10] This list is illustrative, not exhaustive. For example, though not specifically listed in Rule 404(b), extraneous—offense evidence may be admissible when a defendant raises an affirmative defense or a defensive issue that negates one of the elements of the crime, or when the evidence is "same transaction contextual evidence."[11]

**5.** 892 S.W.2d 897 (Tex.Crim.App.1994).

**6.** Tex.R. Evid. 404(b).

**7.** *Montgomery v. State,* 810 S.W.2d 372, 387–88 (Tex.Crim.App.1990) (op. on reh'g).

**8.** McCormick's Handbook on the Law of Evidence § 188, at 445 (2d ed.1972). Justice Jackson, in explaining the rationale for the common-law rule, stated that evidence of the defendant's bad character is inadmissible, but not because it is irrelevant:

[O]n the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *see Crank v. State,* 761 S.W.2d 328, 341 (Tex. Crim.App.1988) ("[e]vidence showing the

commission of an extraneous offense is usually excluded not because it is without legal relevance, but because such evidence is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him").

**9.** To be relevant, the evidence must have some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable then it would be without the evidence." Tex.R. Evid. 401.

**10.** Tex.R. Evid. 404(b).

**11.** *See Rankin v. State,* 974 S.W.2d 707, 709 (Tex.Crim.App.1996) (stating that "if evidence [of uncharged misconduct] 1) is introduced for a purpose other than character conformity, 2) has relevance to a 'fact of consequence' in the case and 3) remains free of any other constitutional or statutory prohibitions, it is admissible"); *Banda v. State,* 768 S.W.2d 294, 296 (Tex.Crim.App.1989) (suggesting that the catalogue of "other purposes" listed in Rule

For extraneous—offense evidence to be admissible under both Rule 404(b) and Rule 403, that evidence must satisfy the following two-prong test:

- Is the extraneous offense evidence relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character?

- Is the probative value of the evidence sufficiently strong so that it is not substantially outweighed by unfair prejudice? [12]

If the answer to both of these questions is "Yes," then the extraneous—offense evidence is admissible under both Rules 404(b) and 403. If the opponent invokes only Rule 404, then only the first prong must be satisfied.[13] If both Rules 404 and 403 are invoked, then both prongs must be satisfied.

### III.

In the present case, we are concerned only with the first, relevancy, prong: Were the twelve pictures of Autumn, showing bruises on her face, arms, and legs,[14] relevant to a fact of consequence in this case apart from their tendency to prove appellant's conduct in conformity with character?

At trial and in the court of appeals, the State argued two distinct theories of relevancy: the photographs of Autumn's injuries were admissible

(1) to rebut the defensive theory that Crystal Johnson had burned Christopher's palm with her cigarette; and

(2) to demonstrate that Christopher's burn was not likely the result of appellant's mistake, accident, or inadvertence.

Each of these is a valid legal theory for admitting evidence of extraneous—offense evidence for a non-character purpose under Rule 404(b). The issue here, however, is whether the evidence offered tends to prove either of these propositions, i.e., were the pictures of Autumn's bruises relevant under Rule 401? They were not.

**A. The pictures of Autumn's bruises did not tend to show that it was appellant, rather than Crystal, who burned Christopher's palm with a lit cigarette.**

██ Extraneous offense evidence might be relevant under Rule 404(b) to prove identity by rebutting a defensive theory that someone other than the defendant caused the specific injury alleged.[15] In such a case, evidence of another act of

404(b) is not exhaustive and that "[w]hether or not it neatly fits one of these categories, an extraneous transaction will be admissible so long as it logically tends to make the existence of some fact of consequence more or less probable"); *Crank*, 761 S.W.2d at 341 (noting that "[p]robably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory").

**12.** *See Montgomery*, 810 S.W.2d at 388–89.

**13.** *Id.; see also Santellan v. State*, 939 S.W.2d 155, 169–70 (Tex.Crim.App.1997) (citing *Montgomery* and stating that "[o]nce the trial judge has ruled on whether the evidence is

relevant beyond its character conformity value, he has ruled on the full extent of the opponent's Rule 404(b) objection.... The opponent must then make a further objection based on Rule 403, in order for the trial judge to weigh the probative and prejudicial value of the evidence").

**14.** The first of these twelve color pictures shows a broadly grinning little girl with tousled hair and a brightly colored shirt. The rest of the pictures show various portions of Autumn's face and body and depict various bruises in the final stages of healing.

**15.** *See, e.g., Lane v. State*, 933 S.W.2d 504, 519 (Tex.Crim.App.1996).

misconduct could be offered to show that it was the defendant, and not some other person, who was the assailant in the charged incident, because the defendant committed another act very similar to the charged act.[16] Proof of identity is a legitimate non-character purpose under Rule 404(b).[17] But, before admitting evidence of another act of misconduct to show the identity of the assailant under this particular theory, the State must first show that the defendant is, in fact, the person who committed the other act.

Here, the evidence was undisputed that *both* appellant and Crystal beat and injured both Christopher and Autumn. Both had been convicted of those crimes before this trial began. Appellant, through his direct examination of Crystal, raised the possibility that she, not appellant, had burned Christopher with the cigarette. But the State has not explained how the pictures of Autumn, showing bruises on her arms, legs, and face caused by *both* appellant and Crystal, tend to make it more likely that appellant, not Crystal, burned Christopher with the cigarette. There was no testimony that appellant ever burned Autumn with a cigarette and there are no cigarette-burn injuries shown in the pictures of Autumn. Contrary to the court of appeals' opinion, the pictures of Autumn's bruises simply do not logically "rebut[ ] any implication drawn by defense counsel that the burn was accidentally inflicted by [Crystal] Johnson." [18]

The pictures do, as the court of appeals noted, tend to show "a larger pattern of abuse" by both appellant and Crystal against both Christopher and Autumn. But a "larger pattern of abuse" is the same as "chronic child abuse," the proof of which is intended to show appellant is a child abuser and he was acting in conformity with that bad character on the charged occasion. That is precisely the propensity theory rejected by this Court in *Owens v. State*.[19] In *Owens*, the defendant was charged with aggravated sexual assault of a child, and the State offered evidence of an unadjudicated offense demonstrating the defendant's "system" of criminal conduct. This court agreed that "the term 'system' can be used synonymously with the terms 'modus operandi' or 'methodology' to refer to a defendant's distinctive and idiosyncratic manner of committing criminal acts" [20] when the material fact at issue

16. *Id.* ("[t]o be admissible to show identity, an extraneous offense must be so similar to the offense charged that the offenses are marked as the accused's handiwork"). For example, if a witness testified in this case that he had seen appellant reach out, grab Autumn's hand, and burn her palm with a lit cigarette two days before the group came to the hospital, this testimony (and any pictures showing Autumn's palm with a cigarette burn) would clearly be relevant as tending to show that it was appellant, not Crystal, who burned Christopher's palm. To prove identity in this context, the two acts must be so distinctively similar as to constitute a "signature" act. *See Beets v. State*, 767 S.W.2d 711, 740–41 (Tex. Crim.App.1987) (noting the defendant's "signature" use of the same weapon, motive, time, and means of disposing of bodies, in two different murders); *see also Taylor v. State*, 920 S.W.2d 319, 322 (Tex.Crim.App. 1996) (prior murder committed ten days before capital murder was sufficiently similar to be a "signature crime").

17. *Montgomery*, 810 S.W.2d at 387; *Bishop v. State*, 869 S.W.2d 342, 346 (Tex.Crim.App. 1993) (although identity was a valid legal theory, evidence of uncharged misconduct was not sufficiently similar to charged conduct to constitute a "signature").

18. *Johnston*, 115 S.W.3d at 765.

19. 827 S.W.2d 911 (Tex.Crim.App.1992).

20. *Id.* at 914–15.

is the defendant's identity. But a "system" or "pattern" of committing offenses by itself is exactly the forbidden inference that one who violated the [laws] on one occasion must have violated them on the occasion charged in the incident. Unless something more than pattern and temporal proximity is required, the fundamental rule is gone. That is why "pattern" is not listed in Rule 404(b) as an exception. Patterns of acts may show identity, intent, plan, absence of mistake, or one of the other listed grounds, but a pattern is not itself a reason to admit the evidence.[21]

Here, the photographs of Autumn's bruises do no more than show the result of previous beatings inflicted by both appellant and Crystal. The pictures do not tend to prove the fact of consequence for which the State offered the evidence: to show that appellant, not Crystal, burned Christopher. Therefore, the pictures were not relevant under Rule 404(b) to show appellant's identity as the assailant.

## B. The pictures of Autumn's bruises did not tend to rebut any defense that *appellant* accidentally, mistakenly or inadvertently burned Christopher's palm.

■■ A second proper theory of admissibility under Rule 404(b) is evidence of uncharged misconduct to show the absence of mistake or accident. Sometimes a defendant admits the conduct, but raises a defense of "it was an accident," or "it was inadvertent."[22] For example, in an injury to a child case, the defendant might agree that he had caused the child's injury by burning him with a lit cigarette, but that it was an accident—the child "ran into" the cigarette—or he mistakenly put the cigarette down on the child's hand instead of the nearby ashtray. In such a case, the State may rebut the defense of "accident" or "mistake" with evidence of other conduct by the defendant which tends to show that his actions on those occasions, and hence on this occasion as well, were not mistaken, inadvertent, or accidental.[23]

21. *Id.* at 916 (quoting *United States v. Beasley*, 809 F.2d 1273, 1278 (7th Cir.1987)).

22. *See, e.g., Morgan v. State*, 692 S.W.2d 877, 881–82 (Tex.Crim.App.1985) (evidence of other occasions on which defendant rubbed children's genitals was admissible to show absence of accident or mistake; "[e]ven assuming that such other instances were short and, individually, could be attributed to accident, the repetition of the conduct, in combination with the relatively short 'rubbing' of complainant's sister's genitals renders the inference of accidental contact in the prosecuted offense highly improbable"); *Plante v. State*, 692 S.W.2d 487, 490, 492–94 (Tex.Crim.App.1985) (defendant's extraneous acts of nonpayment for sale, lease, or loan of goods or services were admissible in prosecution for theft by deception when his intent could not be inferred from nonpayment in the charged offense); *Hernandez v. State*, 914 S.W.2d 226, 232–33 (Tex.App.-Waco 1996, no pet.) (in injury to a child prosecution, evidence that defendant hit 17–month–old child in stomach two weeks before charged

offense admissible to disprove defendant's theory of accident—that he improperly performed a Heimlich maneuver to dislodge a piece of food in child's mouth).

23. In some instances, evidence of extraneous acts might be relevant to demonstrate that the injury was the result of an intentional act, not an accident or mistake, even though there is no independent evidence that the defendant is the person who committed the extraneous act or that the extraneous act was committed in a strikingly similar manner. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[w]hen offered to show that certain injuries are a product of child abuse, rather than accident, evidence of prior injuries is relevant even though it does not purport to prove the identity of the person who might have inflicted those injuries"); *Robbins v. State*, 88 S.W.3d 256, 266–69 (Tex. Crim.App.2002) (Cochran, J., concurring) (discussing "doctrine of chances" in proving *corpus delicti*—fact that injuries to child were a product of intentional abuse rather than an accident or natural causes—in prosecution for

In this case, however, appellant's defense was not that *he* accidentally or mistakenly burned Christopher's palm. His defense was that *Crystal* accidentally or mistakenly burned Christopher.[24] The State argues that the pictures of Autumn's bruises showed that Christopher's burn was not the result of an accident or mistake—but this theory misses a crucial step.[25] It simply does not matter, in this trial, whether Crystal caused the burn accidentally or intentionally if appellant did *not* cause the burn. Appellant's sole defense was: Crystal burned Christopher with her cigarette. There is no evidence or suggestion in this record that Christopher accidentally ran into a cigarette held by appellant. The evidentiary choices were: 1) Christopher accidentally ran into a cigarette held by Crystal; or 2) appellant knowingly or intentionally held the cigarette to Christopher's palm and burned him either because Christopher wouldn't stop crying, or to show Christopher that the cigarette was hot, or "On purpose. For nothing." Pictures of Autumn's injuries do not tend to prove or disprove either of these options. Given the defendant's position in this particular case, the State could not offer extraneous offense evidence

injury to child). That theory does not apply here, however, because it is undisputed that both appellant and Crystal had intentionally beat these children. The only issue is which one of the two of them caused the cigarette burn.

**24.** During his opening statement, appellant's counsel stated:

> You're going to hear a lot of evidence about the bad things that happened to these children. There's no doubt they were seriously hurt. But I want you to keep in mind about what this trial is about. It's about a cigarette burn on a little boy's hand. You're going to hear, most likely, from the mother of the child. And you're going to hear that on two separate occasions, in this courtroom, she admitted to burning the child's hand with a cigarette.

During closing arguments, the defense quoted Crystal's testimony from the termination of parental rights hearing: "That occurred by me on accident. He [Christopher] was running into the house and I had the cigarette and he ran into the cigarette." The defense reiterated that just a week before that testimony, Crystal had testified at her sentencing hearing that she accidentally burned Christopher with her cigarette and explicitly denied "covering up" for appellant. Appellant's counsel concluded: "So I think she probably would be telling the truth then. She came up here yesterday and told you that she was lying then and she's telling the truth yesterday. So I think you've got a reasonable doubt issue right there if nothing else."

**25.** In this Court, the State, for the first time, argues:

> the evidence was used to show that, while Mrs. Johnson was guilty of any number of injuries to her children, she was not responsible for the injury specified in the instant indictment. Her willingness to acknowledge injuries she caused to both children, and her acquiescence in others, made her statements regarding Petitioner's actions in the instant case more credible, and reinforce the State's position that he was the actual perpetrator.

Under this theory, pictures of Autumn's injuries, caused by both Crystal and appellant, are relevant to show that Crystal is credible in testifying that appellant burned Christopher because she was willing to admit that she had caused other injuries to a different child. First, the Supreme Court has rejected the legal proposition that a witness who admits to some wrongdoing is therefore more credible when asserting blame against another person. *See Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) ("that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts"). Second, any theory of "shoring up the witness' credibility" with evidence of extraneous offenses was explicitly rejected in *Pavlacka v. State*, 892 S.W.2d 897, 902–03 (Tex.Crim.App.1994) (extraneous offense evidence was not admissible to "shore up" or rehabilitate child sexual—assault complainant's testimony after he had been impeached with a prior inconsistent statement).

to rebut the defense of accidental injury by a third person.[26]

Therefore, the twelve pictures were irrelevant to prove either identity or absence of mistake under Rule 404(b). They were relevant only for the purpose prohibited by Rule 404—proof of appellant's bad character for being a "chronic child abuser" of both Christopher and Autumn. The trial court erred in admitting this evidence because it did not have the discretion to admit irrelevant evidence.[27]

## C. Although the photographs of Autumn's bruises were irrelevant, they carried very little prejudicial freight. Therefore, the error in admitting photographs of Autumn's bruises was harmless.

■ Normally, having found that the court of appeals erred in upholding the admission of this evidence, we would remand the case to that court to conduct a harmless error review. However, in this case, the State argues, and we agree, that any error is so plainly harmless that we should resolve that issue for the sake of judicial economy.

Here, the very inference that is prohibited by Rule 404(b)—bad character and conduct in conformity with that bad character—was already before the jury in multiple ways. The medical records contained Christopher's diagnosis as the victim of "chronic child abuse." The defense offered evidence that appellant had already been convicted of injury to a child for having beaten both Christopher and Au-

tumn and had been sentenced to 45 years in prison. The evidence that appellant and Crystal had beaten Autumn was already before the jury from testimony by a CPS investigator and Crystal herself. Appellant's admissions that he had burned Christopher with the cigarette were already in evidence through a police officer and a CPS investigator, as well as through his wife's testimony.

The numerous photographs of Christopher's bruises and other, very serious, injuries were also already in evidence. Those pictures show large welts, open sores, a large knot on Christopher's lower back, red bruises on top of yellow bruises, black eyes and a cut under his eye. He is connected to tubes and lying on a hospital bed. The photographs of Autumn pale in comparison. Autumn is smiling; she is either fully clothed or standing up; her bruises are almost healed; they are much fewer in number; and she has only slight discoloration beneath her eyes.

Neither appellant nor the State mentioned these pictures during closing argument. Instead, they focused on the disputed issue: appellant's identity as the person who did or did not burn Christopher's palm. The defense counsel had already inoculated the jury, during his opening statement, that the jury was "going to hear a lot of evidence about the bad things that happened to these children. There's no doubt they were seriously hurt." The photographs of Autumn erroneously admitted into evidence, however, do not show

**26.** *See, e.g., Russell v. State,* 113 S.W.3d 530, 538–39 (Tex.App.-Fort Worth 2003, pet. ref'd) (evidence of extraneous offense occurring five weeks after capital murder not admissible to show defendant's intent to kill when defendant never contended that he or co-defendant accidentally or mistakenly shot victim; instead, the disputed issue was whether a third person shot victim).

**27.** *Montgomery,* 810 S.W.2d at 387 (stating that if "the evidence has no relevance apart from character conformity, then the evidence is absolutely inadmissible. The trial court has no discretion to admit it").

serious injuries; they show some healing bruises on what looks to be an otherwise happy child.

In sum, after reviewing the entire record, we are confident that the trial court's error in admitting these photographs did not affect appellant's substantial rights and did not play any part in his conviction for burning Christopher's palm.[28]

We therefore, affirm the judgment of the court of appeals.

KEASLER and HERVEY JJ., concurred.

JOHNSON, J., filed a concurring and dissenting opinion.

JOHNSON, J., concurring and dissenting.

While I join the majority's opinion in parts "A" and "B," I respectfully dissent to the Court's opinion in part "C." I write separately to express my disapproval of the failure to remand the case to the court of appeals for a harm analysis. This Court's function is to review the decisions of the lower appellate courts, and as the court of appeals has not yet performed a harm analysis, I believe we must allow that court to pass on the question first. "It is not our duty to preemptively execute the function of a lower tribunal, and the preservation of our system of appellate review dictates that we must forbear from the temptation of appropriating the rightful duties of the courts of appeals in the name of judicial economy." *Owens v.*

*State,* 827 S.W.2d 911, 917 n. 7 (Tex.Crim. App.1992).

---

**28.** Tex.R.App. P. 44.2(b); *see King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (disregarding the erroneous admission of evidence if that evidence did not have a substantial or injurious influence on the jury's decision); *Solomon v. State,* 49 S.W.3d 356, 365 (Tex. Crim.App.2001) ("We have determined that substantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect' ") (citation omitted).