

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-359-CR**

THOMAS LYNN CURRY                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                                      STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Thomas Lynn Curry of delivery of between four and two-hundred grams of a controlled substance, and the trial court sentenced him to twenty-five years' confinement. In a single point, Curry argues that the trial court abused its discretion by admitting in evidence unadjudicated extraneous offenses. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

On October 11, 2006, Officer Alexander Simmons of the Arlington Police Department received information that an individual going by the name of "T" was possibly selling narcotics. Officer Simmons called a telephone number, spoke to "T," and told "T" that he wanted to purchase a "quarter" of crack cocaine. "T" called Officer Simmons back ten minutes later and told Officer Simmons to meet him at the Budget Suites in Arlington. Officer Simmons went to the motel, met "T" in the parking lot, and accompanied him to one of the motel rooms. Inside the room, "T" gave Officer Simmons an off-white, rock-like substance that was subsequently tested and determined to be cocaine. "T" weighed the substance on a digital scale, and Officer Simmons paid "T" $175. Officer Simmons was in the motel room with "T" for approximately four to five minutes and was able to get a good look at "T."

Officer Simmons did not intend to arrest "T" on October 11, 2006; he only sought to establish "some type of rapport" with him so that he could purchase additional, larger quantities of narcotics from him at a later time. After the initial transaction, however, Officer Simmons was unable to make any other "buys" from "T." Therefore, his next step was to determine "T's" identity.

On October 17, 2006, Officer Simmons saw "T" out front of the Arlington Inn, which is located about two to three blocks from the Budget

2

Suites where the October 11, 2006 transaction occurred. Officer Simmons called for a patrol officer to come and identify "T." Officer Norman Nillpraphan arrived and made contact with "T." "T" told Officer Nillpraphan that he was not supposed to be on the property and that he had to leave, and he admitted that he had a criminal trespass warning. Officer Nillpraphan confirmed that "T" had a criminal trespass warning, and he arrested "T" after a backup officer arrived. While performing a search incident to arrest, Officer Nillpraphan discovered an off-white, rock-like substance in "T's" pocket that was subsequently tested and determined to be cocaine.

Officer Nillpraphan informed Officer Simmons that "T" had been identified and arrested. Officer Simmons obtained "T's" name, retrieved a "jail folder" and photograph related to the name, and recognized the individual in the photograph as the same person who delivered cocaine to him on October 11, 2006. At trial, Officer Simmons identified "T" as Curry.

In his sole point, Curry argues that the trial court abused its discretion by admitting in evidence the unadjudicated October 17, 2006 extraneous cocaine possession and trespass offenses. Arguing that the introduction of the extraneous offenses served merely to try him as a criminal generally, Curry challenges the State's contention at trial that the offenses were admissible to establish his identity.

3

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex. R. Evid. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g). This rule reflects the well-established principle that a defendant should not be tried for some collateral crime or for being a criminal generally. *Soffar v. State*, 742 S.W.2d 371, 377 (Tex. Crim. App. 1987). Evidence of prior criminal conduct may, however, be admissible if it is logically relevant to prove some other fact, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004). For extraneous offense evidence to be admissible under rule 404(b), the evidence must be relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character. *Johnston*, 145 S.W.3d at 220. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401.

An extraneous offense may be admissible to prove identity only if the identity of the perpetrator is at issue in the case. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). Identity can be raised by cross-examination,

4

such as when the identifying witness is impeached on a material detail of the identification. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). When the State uses an extraneous offense to prove identity by comparing common characteristics of the crime, the extraneous offense must be so similar to the charged offense that it illustrates the defendant's "distinctive and idiosyncratic manner of committing criminal acts." *Page*, 213 S.W.3d at 336; *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996); *see also Segundo v. State*, No. AP-75604, 2008 WL 4724093, at *4–5 (Tex. Crim. App. Oct. 29, 2008). The evidence must demonstrate a much higher degree of similarity to the charged offense than extraneous acts offered for other purposes, such as intent. *Bishop v. State*, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993).

In reviewing the decision to admit extraneous offense information, appellate courts should take into account the specific characteristics of the offenses and the time interval between them. *Thomas v. State*, 126 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Sufficient similarity may be shown by proximity in time and place or by a common mode of committing the offense. *Id*.; *see also Lane*, 933 S.W.2d at 519. The extraneous offense and the charged offense can be different offenses so long as the similarities between the two offense are such that the evidence is relevant. *Thomas*, 126 S.W.3d at 144.

5

We will not disturb a trial court's evidentiary ruling absent an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). As long as the trial court's ruling is within the zone of reasonable disagreement and is correct under any theory of law, it must be upheld. *Id*.

Here, Curry's identity as the individual responsible for delivering cocaine to Officer Simmons on October 11, 2006, was not only at issue in the case, it was also Curry's primary defensive theory. Although Officer Simmons testified that he was able to get a good look at Curry in the motel room, he agreed during cross-examination that "it was [his] intent to make a buy and not really observe this person and identify them" and that he was not "in there to really observe the guy." Curry questioned Officer Simmons about Curry's attire. Officer Simmons said that he did not notice anything unusual about Curry at the time of the delivery and that he was not focusing on any skin discoloration, noticeable scars, or missing teeth. Curry pointed out that Officer Simmons listed in his report of the October 11, 2006 transaction that Curry stood 5'10" tall and weighed approximately 175 pounds but that Officer Simmons listed in a subsequently prepared arrest warrant affidavit that Curry stood 5'11" tall and weighed approximately 230 pounds, a weight difference of fifty-five pounds. Curry's closing argument primarily focused on his defensive theory of mistaken identity. He concluded his argument with the following:

6

What we've got here is just a case of mistaken identity. Officer Simmons was out doing his job, but police officers make mistakes. And this is the kind of mistake that can cost a man his freedom. You need to be sure beyond a reasonable doubt that it was Mr. Curry that day on October the 11th, and that's why we're asking you to find him not guilty.

The October 11, 2006 delivery offense and the October 17, 2006 possession offense are different offenses, but there are similarities between the two demonstrating the latter's relevance to show Curry's identity. Geographically, the offenses occurred in close proximity to one another. Officer Simmons testified that the Budget Suites motel is at most about two to three blocks from the Arlington Inn or about a "good five-minute walk." The area where both motels are located is "a highly, highly, highly documented area where narcotics are being sold" and delivered to. Temporally, the offenses occurred within a relatively short period of time. Curry delivered cocaine to Officer Simmons on October 11, 2006, and Officer Nillpraphan discovered cocaine in Curry's pocket on October 17, 2006, just six days later. Both offenses involved the same narcotic; cocaine. Both offenses also occurred at motels. Furthermore, when Officer Simmons arrived at the motel on October 11, 2006, Curry approached his vehicle, meeting him outside in the parking lot. On October 17, 2006, Officer Simmons observed Curry outside of the Arlington Inn "just walking back and forth."

7

Considering this evidence, sufficient similarities existed between the delivery offense and the extraneous possession offense such that the extraneous offense was relevant to identify Curry as the individual who delivered cocaine to Officer Simmons. Curry's possession of cocaine thus made more probable his identity as the individual responsible for delivering cocaine to Officer Simmons, which is a fact of consequence in the case apart from its tendency to prove conduct in conformity with character. *See* Tex. R. Evid. 403; *Johnston*, 145 S.W.3d at 220. Accordingly, we hold that the trial court did not abuse its discretion by admitting evidence of the October 17, 2006 cocaine possession extraneous offense.

Considering the entire record, to the extent the trial court may have abused its discretion by admitting the trespass violation, we hold that any such error was harmless. *See* Tex. R. App. P. 44.2(b) (providing that we disregard error unless it affected appellant's substantial rights).

Curry also argues that the trial court abused its discretion by admitting the extraneous offense evidence because the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Curry, however, did not assert a rule 403 objection to the evidence when he raised the extraneous offense matter before the trial court. His only basis for asserting this argument seems to be the trial court's comment when making

8

its ruling on the admissibility of the extraneous offenses that "the probative value outweighs the prejudicial effect on this."[2]  A trial court need not engage in a rule 403 balancing test unless the opponent of the evidence asserts a rule 403 objection.  *See Feldman v. State*, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 388.  The trial court's comment utilizing common rule 403 verbiage was not sufficient to raise and preserve Curry's rule 403 argument that he now asserts on appeal.  *See* Tex. R. App. P. 33.1(a)(1)(A).  Accordingly, we overrule Curry's sole issue and affirm the trial court's judgment.

PER CURIAM

PANEL:  HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 18, 2008

---

[2] Curry states, "The trial court, having interjected the balancing test for admission of relevant, but prejudicial evidence into the record, [Curry] will address admission of the offenses under [rule of evidence 403]."