Opinion issued January 13, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00853-CR

———————————

Tony Romero, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 56th Judicial District Court 

Galveston County, Texas



Trial Court Case No. 08CR3409

 



 

MEMORANDUM OPINION

A jury
found appellant, Tony Romero, guilty of the offense of aggravated robbery[1] and assessed his
punishment at confinement for five years. 
In three points of error, appellant contends that the evidence is
legally and factually insufficient to support his conviction and the trial
court erred in admitting evidence of extraneous offenses during the guilt phase
of the trial.  

We affirm.  

Background

           Maria Sammons, the complainant, testified that
while she was working at a Shipley’s Donuts shop, appellant entered the
business between 3:30 and 4:00 p.m.  He
ordered some donut holes, she retrieved the donut holes for him, and he paid
for his order and left the shop. 
Approximately one to two minutes later, appellant returned for milk.  The complainant handed appellant the milk,
and he paid for the milk.  As the
complainant gave him some change, appellant pulled out a firearm, pointed it at
her, and told her “to give him all the money.” 
After appellant ordered the complainant to go to the back of the shop,
he left the scene.  The complainant
explained that “not that much” money was taken, “maybe $50,” and because she thought
appellant “was going to shoot [her],” she complied and gave him the money.  Once appellant left, the complainant went to
the front of the shop and looked through a glass window, where she saw a black
car “waiting” for appellant and appellant enter the passenger side of the car.  The complainant “was able to look at the
[license] plate” and remembered the first four characters.  At trial, she stated that the license plate number
contained the letter H and she thought the numbers of it were “673 or 5,” but
that she was “not completely sure” because she “was very nervous.”  

          When
the complainant called for emergency assistance, she told the operator that “a
young boy had pointed a gun at [her] and requested [her] to give him the
money.”  She described her assailant as
“Hispanic, very short hair and a little tall, not too tall, maybe five-three.”  The complainant explained, however, that she
was not “very good in measures” and “not very good in calculating feet or
inches.”  She explained that she is five
feet and two inches tall and her assailant was “a little bit taller.”  On cross-examination, the complainant affirmed
that she “gauged the height” of her assailant “relative to her height.”  

          At
trial, the complainant was unable to recall what her assailant was wearing, and
she was “not sure whether it was a khaki pant[]” and “not sure whether [his shirt]
was blue.”  She explained that her
assailant was not wearing a hat, bandana, or “anything to cover any facial
features.”  She “was very nervous.”  Nevertheless, the record reveals that the
complainant, in court, identified appellant as the assailant.  

          Friendswood
Police Department (“FPD”) Officer P. Anaya testified that on October 27, 2008,
while on duty, she was dispatched to a Shipley’s Donuts shop and, upon her arrival,
met the complainant, who was able to communicate only in Spanish.  The complainant provided Anaya with a
description of her assailant and the car in which he left.  The complainant told Anaya that the first
four characters on the license plate were “673 H,” the car was black, and
“possibly a Hyundai.”  Anaya explained
that she participated in the photographic lineup process “because of the [complainant’s]
language barrier.”  When shown a
photographic lineup consisting of a photograph of appellant and five other men,
the complainant “pointed” to the photograph of appellant and stated that he
“looked like the person that came into her shop,” but there was a “weight
difference.”  Anaya stated that the
complainant described her assailant as approximately five feet and three inches
tall and wearing a “red T-shirt” with “gray pants.” 

          FPD Detective
Price testified that on October 27, 2008, he and another detective responded to
the robbery at the Shipley’s Donuts shop. 
Upon his arrival, he began to conduct an investigation in which he
“canvassed the immediate area” around the shop and had the other detective
“attempt to obtain latent [finger] prints off the doors.”  He explained that they were unable to locate
any finger prints from the counter top where the robbery took place because it
“was a very porous, rough material.”  The
officers were able to lift some finger prints off the door of the shop, but they
were not of sufficient quality and “were more like smudges.”  Price explained that although the officers
canvassed the area around the shop, they were unable to find any
witnesses.  Although the shop was
equipped with a “closed-circuit” surveillance system, the camera was not
recording at the time of the robbery. 

          Webster
Police Department Officer B. Muniz testified that on October 25, 2008, she had initiated
a stop of a car for racing.  The car was
a black “sporty” Acura with license plate number “763 HSC.”  Muniz identified appellant as the passenger
in that car, and when she entered appellant’s information into the “mobile data
terminal” in her patrol car, she learned that appellant had an “outstanding
warrant out of another agency.”  She then
placed appellant under arrest, transported him to the police station, and recorded
his “descriptors” as a male with black hair, brown eyes, medium skin tone,
weight of 180 pounds, and height of six feet. 
On cross-examination, defense counsel had appellant stand, and he asked
Muniz, “Does [appellant] appear to be 6 feet to you?”  Muniz responded, “To me, yes.”  

Sufficiency of the Evidence

          In
his first and second points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction because the jury
“was presented with conflicting and irreconcilable descriptions of the robber
by [the complainant].”

          We
now review the factual sufficiency of the evidence under the same appellate
standard of review as that for legal sufficiency.  Ervin v. State, No. 01-10-00054-CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston
[1st Dist.] November 10, 2010, no pet. h.). 
Under this standard, we are to examine “the evidence in the light most
favorable to the prosecution” and determine whether “a rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.”  Jackson v. Virginia, 442 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979).  Evidence is legally insufficient when the
“only proper verdict” is acquittal.  Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982).    

          A
person commits a robbery if, in the course of committing theft and with intent
to obtain or maintain control of property, he intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death.  Tex.
Penal Code Ann. § 29.02(a)(2)
(Vernon 2003).  A person commits
aggravated robbery if he commits robbery and uses or exhibits a deadly weapon.  Id. § 29.03(a)(2) (Vernon 2003).  A firearm is considered a deadly weapon.  Id.
§ 1.07(a)(17)(A) (Vernon Supp. 2010).  

          In
support of his argument that the evidence is insufficient to support his
conviction, appellant asserts that the complainant’s “own sworn testimony shows
an irreconcilable conflict that [cannot] rise to the level of believability
beyond a reasonable doubt.”  Shortly
after the robbery, the complainant described her assailant as five feet and
three inches tall and wearing a red shirt with gray pants.  However, this description “contradicted and
conflicted with her own testimony” at trial that she could not recall what the
robber was wearing.  Appellant also notes
that Officer Muniz testified that in appellant’s booking description, his
height was noted at six feet.  Appellant
concedes that the fact-finder alone “determines what weight to place on
contradictory testimonial evidence.”  He
argues, however, that the “jury in this case was not asked to determine which
of two eyewitness accounts were truthful or credible” because the complainant
was the only witness.  He asserts that
“the only way a guilty verdict is obtained on such conflicting identification
evidence is if, and only if, the jury disregards some of [the complainant’s]
own sworn testimony, but yet believes some of her other sworn testimony.  Amazing and incredible as it may seem, but
true.”  

          It
is true that the complainant described appellant as five feet and three inches tall,
and she testified that he is “a little bit taller” than her.  However, the complainant also testified that
she was “not very good in calculating feet and inches.”  Significantly, the complainant told Officer
Anaya that after he had robbed her, she saw appellant enter a black car with a
license plate containing the numbers of “673 or 5” and the letter “H.”  And, two days prior to the robbery, appellant
had been arrested when he was a passenger in a black car with license plate
number “763 HSC.”  The complainant
described her assailant as a Hispanic male with short black hair, and she identified
appellant as her assailant from a photographic lineup and in court.  As the exclusive judges of the facts, the
credibility of the witnesses, and the weight to be given their testimony, the
jurors were free to believe or disbelieve all or any part of the testimony of
the complainant.  McKinny v. State,
76 S.W.3d 463, 468–69 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
From this evidence, a rational trier of fact could have
found, beyond a reasonable doubt, that appellant was the complainant’s
assailant.  Accordingly, we hold that the
evidence is sufficient to support appellant’s conviction for the offense of
aggravated robbery.  

          We
overrule appellant’s first and second points of error.

Extraneous Offense Evidence

In his third point of error,
appellant argues that the trial court erred in admitting evidence “relating to
extraneous offenses allegedly committed by [appellant].”  Appellant asserts that testimony of Detective
Price about other robberies was inadmissible as extraneous acts and any
probative value of his testimony was outweighed by its prejudicial effect.  See Tex. R. Evid. 404(b), 403; Johnston v. State, 145 S.W.3d 215, 220
(Tex. Crim. App. 2004).    

          Although
appellant does not direct us to the exact testimony of which he complains, a
review of the record reveals the following testimony of Detective Price
relevant to his complaint:

[State]:                 While you were
investigating that lead, did you come to know any other information that helped
you in your investigation?

 

[Price]:                  The witness was able to tell
us -- the victim was able to tell us a partial license plate of the suspect
vehicle, 763. Okay? We immediately started researching every license plate we
could think of through various databases we had at the office with the first
digits being 763. Of course, you get hundreds of vehicles back at that point in
time. You know, we after we talked to the other investigators, got them all
together —

 

[State]:                 When you say “other investigators,”
who are you talking about?

 

[Trial
Counsel]:    Your Honor, I have to object
under State and Federal Constitutional grounds and 4.04. And I believe I’m
going to have to object each time one of these additional questions is asked.

 

[Trial Court]:        Okay. Overruled.  Proceed.

 

[State]:                 Who are you referring to when
you say “other investigators”?

 

[Price]:
                 Alvin PD, I talked to
Pearland Police Department detectives, Webster, Houston.

 

[State]:
                And what was your purpose
in talking with those other detectives?

 

[Price]:
                 The purpose was to let
them know what we had as far as an aggravated robbery. If they had anything
similar as far as that -- they were working that we could work together and try
to develop a positive lead and a suspect.

 

[State]:
                And after speaking with
them did you think that there was any possibility that that might be the case?

 

[Price]:                  Yes. We -- after several
conversations with several investigators, we determined that there had been
several aggravated robberies

 

[Trial
Counsel]:    Objection. This is testimony
based on hearsay and I also object to the introduction under State and Federal
Constitutional grounds and 4.04.

 

[Trial Court]:        Rephrase
your question.

 

[State]:
                After speaking and making
contact with those other agencies, did you develop any further leads in your
case?

 

[Price]:                  Yes, I did.

 

[State]:                  What
lead did you develop?

 

[Price]:                  That Alvin PD had a similar
aggravated robbery.

 

[Trial Counsel]:
   Your Honor, objection. This is under
4.04, Federal                                   and State Constitutional
grounds.

 

[Trial
Court]:        Just answer her question. State your question again.

 

[State]:
                What lead did you develop
as a result of your conversations with the other agencies? What suspect -- did
you come to get a suspect in this case?

 

[Price]:                  Was I able to obtain a suspect?

 

[State]:                 Yes.

 

[Price]:                  Yes, I was.

 

[State]:                 Who was that suspect?

 

[Price]:                  Mr. Romero.

 

[State]:                 And how did you -- how did he come to be a suspect in this
robbery?

 

[Price]:
                 Several factors. One in
particular with the Alvin robbery—

 

[Trial
Counsel]:    And, your Honor, I have to
object under 4.04 and State and Federal Constitutional grounds to the
introduction of this evidence.

 

[Trial
Court]:        Just answer the question. Sustained. Re-ask your question.

 

[State]:                 Once—

 

[Trial Court]:        Re-ask your question.

 

[State]:                 Yes, your Honor . . . .

 

[State]:                 Detective, you said you met with
the detective from Alvin PD, is that correct?

 

[Price]:                  Yes, I did.

 

[State]:                 Did you work with more than one
detective from Alvin PD on this?

 

[Price]:                  Two of them.

 

[State]:                 Which two did you work with?

 

[Price]:                  Bobby Taylor was the lead
detective at one point and Jennifer Goff eventually took over the case under
Bobby’s lead.

 

[State]:
                In speaking with them,
were they investigating similar robberies?

 

[Price]:                  Yes.

 

[State]:                 What were the similarities
between their robberies and the one you were investigating?

 

[Trial
Counsel]:    Objection, your Honor. This
is calling for hearsay as to what other witnesses told this particular witness.
And also on State and Federal Constitutional grounds and under 4.04 we would
object to the admission of this testimony.

 

[Trial Court]:        You’re offering it for which purposes? 

 

[State]:                 Your Honor, we’re offering it to show why he did what he
did in his investigation.

 

[Trial Court]:        I’ll allow it. Overruled.

 

[Price]:
                 We determined that there
were several similar robberies. Vehicle description that was -- that left the
scene in Alvin, type of weapon, Hispanic male, basically going in asking for
the money.  So, we just started working
together on them.

 

[State]:                 Was Tony Romero a suspect in
either of those cases?

 

[Trial
Counsel]:    Objection, your Honor. This
is hearsay as to what these other officers told him regarding the status of
their case. Additionally, under State

 

THE COURT:      I’m going to sustain that.

 

(Emphasis added.)

On appeal, appellant complains only
about the admission of “extraneous offenses” to prove his identity as the man
who robbed the complainant in the instant case. 
As revealed above, however, when Detective Price was asked “how”
appellant became a “suspect” in this case, the trial court sustained
appellant’s objection.  And when Price
was asked specifically if appellant was “a suspect” in “either” robbery case investigated
by the Alvin Police Department, the trial court sustained his objection.  Thus, the trial court admitted no evidence
that appellant committed an extraneous offense, and appellant presents no error
for us to address.  

To the extent that appellant might
by attempting to make a broader complaint about Detective Price’s testimony that
other detectives were investigating similar robberies, we note that the trial
court, in response to appellant’s objections to several of the State’s
questions, instructed the State to rephrase or re-ask its questions.  Also, after some of his objections were
overruled, appellant did not object to other questions involving the
investigations.  Generally, to preserve a
complainant for appellate review, a party must make the complaint to the trial
court with a timely objection and obtain a ruling from the trial court.  Tex.
R. App. P. 33.1(a).  Moreover, “if
a defendant objects to the admission of evidence but the same evidence is
subsequently introduced . . . without objection,” the defendant waives his
earlier objection.  Massey v. State, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996).  Here, appellant did not object to other
questions involving the investigations of other robberies.  He also did not obtain an adverse ruling on some
of his objections.  Bryant v. State, 282 S.W.3d 157, 167 (Tex. App.—Texarkana 2009, pet.
ref’d) (stating that if complaint was not first requested at trial level, and
if that request was not pursued to an adverse ruling, then appellant has
preserved nothing for appellate review). 
Thus, to the extent that appellant attempts to complain about Detective
Price’s testimony about the investigation of other robberies, he has preserved
nothing for our review.  

We overrule
appellant’s third point of error.

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Sharp.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 29.03
(Vernon 2003).