

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00352-CR

---

RASHARI NAE FONNE BRENT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 426th District Court
Bell County, Texas[1]
Trial Court No. 80164, Honorable Steven J. Duskie, Presiding

---

December 4, 2024

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Rashari Nae Fonne Brent, Appellant, was convicted of felony murder and sentenced to serve 52 years in the Texas Department of Criminal Justice.[2] Appellant

---

[1] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001.

[2] TEX. PENAL CODE ANN. § 19.02(b)(3).

raises four issues on appeal, all of which relate to the trial court's admission of evidence of two extraneous offenses. We affirm.

**BACKGROUND**

On the evening of December 5, 2018, Appellant was riding around Temple, Texas, with Chelsea Swint, Veronica Martin, and Jazlyn Miller in Swint's vehicle. Martin contacted eighteen-year-old Isaac Kohlhaas, who was known to sell drugs, and arranged to meet him at a local Walmart. When Kohlhaas arrived in the Walmart parking lot, Appellant and Martin left Swint's car and entered his car. After a few minutes, Martin returned to Swint's car to get a scale, then went back to Kohlhaas's car. A few minutes later, Miller, who had remained in Swint's vehicle with Swint, heard a gunshot. Appellant returned to Swint's car and Miller asked her if she shot Kohlhaas. Appellant responded that "she had to." Martin then returned to Swint's car with money in her hands. The women quickly drove away from the Walmart parking lot. Kohlhaas exited his vehicle, ran toward Swint's car, then collapsed. A Walmart customer saw Kohlhaas lying on the ground and called for help. Kohlhaas, who had been shot in the chest, was taken to a local hospital, where he died.

Appellant was arrested a few days later in South Carolina. She was charged with causing the death of Kohlhaas during the course of committing or attempting to commit a robbery. She entered a plea of not guilty. A jury found her guilty and assessed punishment at 52 years' imprisonment and a $10,000 fine.

At trial, the trial court held a hearing outside the presence of the jury to determine the admissibility of certain testimony from Miller which forms the basis of this appeal.

2

Appellant objected to Miller's testimony regarding a prior robbery and attempted robbery involving Appellant, arguing that it was inadmissible and unfairly prejudicial. After hearing Miller's testimony and the arguments of counsel, the trial court permitted Miller to testify regarding the extraneous offenses.

Miller then testified that, earlier on the same night as the incident with Kohlhaas, the four women drove to a park, intending to rob a man Martin was meeting there to purchase drugs. When the man arrived, Appellant and Martin, who were seated in the backseat of the car, asked to weigh the marijuana that he brought. The man hesitated to enter the car and did not want the women to weigh the drugs. Appellant then brandished a gun, and the man grabbed the drugs and ran away. The women left the park. According to Miller, Martin was "looking for more people to rob." Martin then mentioned Kohlhaas and made plans to meet him at Walmart. Miller and Swint expressed reluctance to rob Kohlhaas, because they knew him, but Martin and Appellant proceeded with the plan.

Miller further testified that she was involved in a robbery with Appellant and Swint in November of 2018, just a few weeks before Kohlhaas was shot. According to Miller, Appellant arranged to meet a man in the parking lot of an apartment complex in Killeen. The three women went to the location in Swint's car. The man, who "had . . . some drugs on him," got into the backseat of the car with Appellant and talked to her for a while. Miller testified, "The next thing you know [Appellant] pulled a gun out on him." Miller described the gun as a small, black handgun. The man gave up his drugs and the women left.

At the time Miller testified, Appellant requested and received a limiting instruction. The trial court instructed the jury that the evidence of extraneous offenses could only be

3

used for "[t]hings such as proving motive . . . .  proving intent, opportunity, plan and preparation; things of that nature."

## ANALYSIS

<u>Admission of Evidence of Prior Robbery and Attempted Robbery</u>

In her first two issues, Appellant contends that the trial court abused its discretion in allowing Miller to testify about the robbery in Killeen weeks before the murder and the attempted robbery on the same evening as the murder.  We consider the two issues together as the legal analysis is the same.  We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard.  *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Rule 404(b) of the Texas Rules of Evidence excludes evidence of "a crime, wrong, or other act" offered solely to show that a defendant acted in conformity with bad character, but it allows the admission of such extraneous offenses "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  TEX. R. EVID. 404(b); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004).  Further, such evidence is admissible when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime.  *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  The rule is one of inclusion rather than exclusion.  *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).  Whether extraneous offense evidence has relevance other than proving conformity with bad character is a question for the trial court.  *Id.*

In this case, the State was required to prove that Appellant intentionally or knowingly committed or attempted to commit a felony, namely robbery or aggravated robbery. Appellant presented the case as a "drug deal gone bad" in which Appellant did not intend to rob Kohlhaas. For example, Appellant's counsel questioned witnesses about the likelihood of attempting robbery in a Walmart parking lot and emphasized evidence that Kohlhaas's car, drugs, wallet, and cash were not stolen. In his closing, Appellant's counsel argued, "The lead detective could not rule out this was a drug deal, what we call a drug deal gone bad. No matter who's responsible for the drug deal gone bad, that's not felony murder . . . . You simply cannot rule out, drug deal gone bad, Isaac's unfortunate death, that's a not guilty verdict." Thus, Appellant's argument placed her intent to commit robbery at issue.

Evidence of the extraneous offenses shows that Appellant had the requisite intent to participate in the instant offense. As in the instant case, the two extraneous offenses testified to by Miller involved the women contacting drug dealers under the pretense of arranging a purchase, driving in Swint's vehicle to the location where they had lured the dealers, attempting to acquire possession of the drugs in a parked car, and Appellant drawing a gun on the target. The mode of committing the offenses in this case, and the circumstances surrounding the offenses, are sufficiently similar for the extraneous offenses to be relevant to Appellant's intent and to rebut Appellant's theory that the encounter with Kohlhaas was merely a drug sale in which someone panicked. *See, e.g., Sorto v. State*, 173 S.W.3d 469, 491 (Tex. Crim. App. 2005) (where intent was in dispute, trial court properly admitted evidence of defendant's involvement in similar murder as relevant to determination of whether defendant anticipated or intended murders of

5

victims); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (rebuttal of defensive theory is permissible purpose for admitting extraneous offense evidence). The trial court did not abuse its discretion in admitting the challenged evidence. We overrule Appellant's first two issues.

Rule 403 Objection

In her third issue, Appellant asserts that the trial court erred in overruling her Rule 403 objection to Miller's testimony regarding the extraneous robberies. Relevant evidence is properly excluded under Rule 403 when its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403; *Casey*, 215 S.W.3d at 879. An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational, yet indelible, way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Evidence should be excluded under Rule 403 only when there exists "a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996).

Application of these factors reveals that the evidence has significant probative value for establishing Appellant's intent; the extraneous offenses did not involve any actual violence against the robbery targets and are thus unlikely to impress the jury in an irrational way; presentation of the evidence from this one witness did not consume an inordinate amount of time during the five-day trial; and the evidence was needed by the State to respond to Appellant's claim that no robbery was intended. The factors weigh in

6

favor of admission and reveal no "clear disparity" between unfair prejudice and probative value. Accordingly, we conclude that the trial court did not abuse its discretion in finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

Limiting Instruction

Finally, Appellant maintains that she was harmed by the following limiting instruction in the court's charge to the jury:

> You are instructed that if there is any testimony before you in this case regarding any of the defendants' having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, and for no other purpose.

Appellant asserts that the instruction was erroneous because the extraneous conduct evidence was not relevant to any of the enumerated purposes.

Appellant did not object to the jury charge. Thus, to obtain reversal, she must establish egregious harm, that is, that the alleged error affects the very basis of the case, depriving her of a valuable right or vitally affecting her defensive theory. *See, e.g., Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (en banc). Egregious harm is a "high and difficult standard which must be borne out by the trial record." *Young v. State*, 283 S.W.3d 854, 880 (Tex. Crim. App. 2009) (per curiam). The defendant must have suffered "actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

7

The only harm claimed by Appellant on appeal is that the jury was allowed to consider the extraneous offense evidence, which was "not admissible for any purpose." As discussed above, evidence of the previous robbery and attempted robbery was relevant, at a minimum, to the issue of intent and to rebut a defensive theory. The limiting instruction properly apprised the jury that it could consider the extraneous offense evidence for purposes including motive, intent, opportunity, plan, and preparation.[3] Even assuming, without deciding, that the trial court erred in instructing the jury that it could consider extraneous offense evidence for the other enumerated reasons, we cannot conclude that Appellant was egregiously harmed by such an instruction. *See Tolbert v. State*, No. 03-16-00505-CR, 2017 Tex. App. LEXIS 11993, at *22 (Tex. App.—Austin Dec. 22, 2017, no pet.) (mem. op., not designated for publication) (finding no egregious harm where jury instruction on extraneous offenses contained superfluous language).

The jury was instructed not to consider the extraneous offense evidence for any improper purpose, including as substantive evidence of Appellant's guilt. We presume that the jurors understood and followed the court's instructions in the charge absent evidence to the contrary. *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). We cannot say that the inclusion of the instruction in the jury charge in this case "was calculated to injure the rights of [Appellant]." *Jordan v. State*, 593 S.W.3d 340, 347 (Tex. Crim. App. 2020) (court may only reverse "if the error was calculated to injure the rights of the defendant."). Accordingly, we overrule Appellant's final issue.

---

[3] These were the allowable, interrelated purposes specified by the trial court, to which Appellant did not object, at the time Miller testified.

**CONCLUSION**

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.